IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| WILLIE B. SMITH III,<br><br>Plaintiff,<br><br>v.<br><br>JEFFERSON DUNN, Commissioner, Alabama Department of Corrections,<br><br>&<br><br>TERRY RAYBON, Warden, Holman Correctional Facility,<br><br>Defendants. | No. 2:21-cv-00099-RAH<br><br>**CAPITAL CASE**<br><br>**EXECUTION DATE SET FEBRUARY 11, 2021** |

**RESPONSE TO COURT'S ORDER REGARDING STATE'S CHANGES AS TO SMITH ADDENDUM AND EXECUTION PROCEDURES**

Mr. Smith provides the following response to this Court's order concerning "what, if any, issues and/or claims have been resolved based on the information in" (Doc. 10), Defendants' Report to the Court (Doc. 9) ("Report") clarifying and / or modifying the Smith Addendum (Doc. 1-1).

**Claim One**

As for Claim One (Equal Protection from Cruel and Unusual Punishment), the Report makes it clear that Mr. "Smith will not wear PPE once the execution begins so that his face will be unobscured for the consciousness assessment." (Doc. 9). That

1

clarification or modification resolves the portions of Claim One that concern the obstruction of Mr. Smith's face.

The portion of the claim concerning problems arising out of obstruction caused by PPE worn by the officer conducting the consciousness assessment,[1] especially during the name response check, remains viable. The Report leaves it to the discretion of that single correctional officer whether to remove the PPE to perform or judge all or part of the assessment. (Doc. 9 at 1 [2 of 5]). Specifically, the Report provides, "If the correctional officer . . . believes that his assessment of the inmate or his ability to communicate is being obstructed by his own PPE, then he may remove his shield and/or mask for the time necessary." (*Id.*)

The whole purpose of a consciousness test is to monitor reactions to stimuli to determine whether the prisoner is sensate. It will be impossible for the officer conducting the consciousness test to determine if a lack of response to stimuli is because the prisoner is no longer sensate or because the stimuli has been obstructed by the officer's PPE. Leaving the removal of PPE to an officer's discretion does not negate the possibility that the execution will move forward while Mr. Smith is still sensate because he simply did not hear or understand the officer calling his name. Under

---

[1] *See, e.g.*, (Doc 1 at 24 ("The Smith Addendum's use of masks and face shields has introduced substantial and significant risk that at least one or more steps of the consciousness assessment will be conducted or will fail to detect whether Mr. Smith is still sensate after administration of midazolam in violation of his right to be free from cruel and unusual punishment.")).

2

such circumstances, Mr. Smith would undoubtedly be subject to cruel and unusual punishment.[2]

At its core, Claim One is concerned with deviations from the long-established protocol governing the consciousness assessment, such that Mr. Smith's constitutional right to equal protection from cruel and unusual punishment will be placed at substantial risk.[3] The Report has now made it official ADOC policy that a single corrections officer has sole and unreviewable discretion to decide whether to deviate from the long-established protocol.[4] And it is impossible to exercise this discretion in a way that protects Mr. Smith from unconstitutional pain and suffering.

## Claim Two

By permitting Mr. Smith to select three witnesses,[5] the Report alleviates the concern regarding the certainty (under the Smith Addendum) that he would be compelled to choose between constitutional rights.[6] However, it does not remove the

---

[2] *See, e.g.*, *Baze v. Rees*, 553 U.S. 35, 53 (2008) (if a prisoner is not rendered insensate by the first drug, "there is a substantial, constitutionally unacceptable risk of suffocation from the administration of pancuronium bromide [the paralytic] and pain from the injection of potassium chloride"); *Glossip v. Gross*, 576 U.S. 863, 949 (2015) (Sotomayor, J., dissenting) (because the second and third drugs "are intended to paralyze the inmate and stop his heart . . . [and] do so in a torturous manner, causing burning, searing pain," it is "critical that the first drug, midazolam, do what it is supposed to do, which is to render and keep the inmate unconscious").

[3] *See, e.g.*, (Doc. 1 at 24-25).

[4] Neither the Smith Addendum nor the Report indicate what screening is performed of execution team members, let alone what happens if the correctional officer trained to administer the consciousness test is precluded from participating in the execution due to COVID-19 screening procedures. This makes the adoption of a policy of unreviewable discretion in conducting the consciousness assessment even more problematic.

[5] *See, e.g.*, (Doc. 9 at 3 [4 of 5]).

[6] Whether the state law, Ala. Code § 15-18-83, providing that he "may" have up to six witnesses, plus a spiritual advisor, present at his execution requires up to seven witnesses is a separate question more

3

significant possibility that Mr. Smith could be denied the rights identified in Claim Two if his attorney, spiritual advisor, or other witness has a temperature of at least 100.4 degrees *or* tests positive for COVID-19. Spiritual advisors and attorneys are not fungible. Should, for example, Mr. Smith's spiritual advisor have a temperature of 100.4 degrees on the day of the execution, ADOC would prohibit him from entering the facility and carry out Mr. Smith's execution without his spiritual advisor present—even if his temperature is not related to COVID-19.

### Claim Three

The lifting of the blanket restrictions on contact and closeness with Mr. Smith's execution week visitors resolves that concern as to Claim Two.[7] However, Mr. Smith's right to have contact visitation, including with his spiritual advisor, wife, and legal counsel, could still be denied under the changed rules. Specifically, the Smith Addendum and the Report fail to alleviate the real possibility that his constitutional rights, set forth in the Complaint, particularly Claim Two, could still be violated.[8] Further, Mr. Smith himself could be denied visitation with *all* visitors (including his attorney, wife, and spiritual advisor) if he tests positive for COVID-19 at any time between now and his execution, yet still be executed.[9]

---

appropriately decided by a state court. Consistent with this, Mr. Smith is in the process of filing a state court lawsuit concerning this question of state law.
[7] (Doc. 9 at 2-3 [3-4 of 5]).
[8] *See, e.g.*, (Doc 1 at ¶¶ 63-67).
[9] The Report provides that Mr. Smith will be denied visitation if he tests positive for COVID-19. (Doc. 9 at 2 [3 of 5]). It does not say that Mr. Smith's execution will be called off if he tests positive. As such, the harms identified in Claim Two could accrue at any time next week. It is unclear from the

### Temperature Cut-off

The Report also resolves Mr. Smith's concerns about the specific temperature identified as the cut-off for execution week privileges and rights.[10]

Respectfully submitted this 4th day of February, 2021.

/s/ Spencer J. Hahn
SPENCER J. HAHN
OREGON BAR NO. 043027
JOHN ANTHONY PALOMBI
KENTUCKY BAR NO. 86784
ASSISTANT FEDERAL DEFENDERS
FEDERAL DEFENDERS FOR THE
 MIDDLE DISTRICT OF ALABAMA
817 SOUTH COURT STREET
MONTGOMERY, ALABAMA 36104
(334) 834-2099
Spencer_Hahn@fd.org
John_Palombi@fd.org

*Counsel for Mr. Smith*

### CERTIFICATE OF SERVICE

I hereby certify that on February 4, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system.

/s/Spencer J. Hahn
Spencer J. Hahn

---

Smith Addendum and the Report how often, if at all, Mr. Smith will be tested for COVID-19. The Report also fails to identify what kind of rapid testing will be used, its error rate, or whether re-testing will be available.

[10] *See, e.g.*, (Doc. 1 at ¶¶ 59-60).