IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| WILLIE B. SMITH III,<br><br>　　　　　　　　Plaintiff,<br><br>v.<br><br>JEFFERSON DUNN, Commissioner, Alabama Department of Corrections,<br><br>&<br><br>TERRY RAYBON, Warden, Holman Correctional Facility,<br><br>　　　　　　　　Defendants. | No. 2:21-cv-00099-RAH<br><br>**CAPITAL CASE**<br><br>**EXECUTION DATE SET**<br>**FEBRUARY 11, 2021** |

**RESPONSE TO DEFENDANTS' MOTION TO DISMISS
AND REPLY TO DEFENDANT'S OPPOSITION
TO PLAINTIFF'S MOTION FOR STAY OF EXECUTION**

Thirteen days before his scheduled execution, Defendants revealed significant changes to their execution protocol that impacted Mr. Smith's First, Sixth, Eighth, and Fourteenth Amendment rights. This Court expressed concerns, and required Defendants to address them. In the days that have passed, the Defendants have twice more changed the protocol, including in the last pleading they filed before this Court. These events, which have seen four different execution protocols in the last two weeks, illustrate the primary point of Mr. Smith's complaint – his Fourteenth Amendment rights are being violated. He is being treated differently than other death-

1

sentenced inmates in Defendants' quest to carry out an execution during a pandemic. This Court should stay his execution and permanently enjoin Defendants from conducting his execution using the "Smith Addendum" or any of its subsequent permutations.

### I. Recent developments have not rendered Mr. Smith's complaint moot, and he has stated claims upon which relief can be granted.

Upon order of this Court, Defendants made numerous changes to its less than one-week-old addendum to the execution protocol. They increased the number of witnesses from one to three,[1] they clarified the temperature at which visitors/witnesses would have to meet in order to be permitted in the prison, and they agreed that Mr. Smith would not be wearing a mask or face shield while in the execution chamber.[2] After Mr. Smith responded to those changes[3] Defendants made *further* changes to the protocol, providing that witnesses or visitors who tested positive could produce evidence of an indepedently-obtained negative test to gain entry into the prison.[4] Defendants also stated that, should Mr. Smith's spiritual advisor test positive for COVID-19 or not be allowed into the prison because of a temperature of

---

[1] Mr. Smith maintains that it is a misinterpretation of state law to force Mr. Smith to have any fewer than six witnesses plus his spiritual advisor. However, that is an issue of interpretation of state law that is not before this Court.

[2] Doc. 9.

[3] Doc. 11.

[4] Doc. 12.


greater than 100.4, they would "allow" him to seek spiritual comfort from the Holman Chaplain.

However, various questions remain that implicate Mr. Smith's rights. First, Defendants are leaving to a corrections officer's unfettered discretion whether that officer removes his mask and face shield during all or part of the consciousness assessment. Second, the various revisions do not clearly indicate whether Mr. Smith will be executed if he tests positive for COVID-19 during the week.[5] Finally, the revisions do not take into account what happens if Mr. Smith's designated witnesses are unable to attend the execution.

**A. Standard of review for a motion to dismiss**

The Complaint is a civil action governed by the Federal Rules of Civil Procedure. As this Court has stated many times, "A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the sufficiency of the complaint against the legal standard set forth in Rule 8: 'a short and plain statement of the claim showing that the pleader is entitled to relief,' Fed. R. Civ. P. 8(a)(2)." *See Robinson v. Ash*, 2017 WL 4683932, at *2 (M.D. Ala. Oct. 17, 2017). In ruling on a motion to dismiss, this Court "must accept the well pleaded facts as true and resolve them in the light most favorable to the plaintiff." [is this *Id.*?]

---

[5] If Mr. Smith tests positive for COVID-19 this week and Defendants proceed with plans to execute him anyway, he will need to file an amended complaint setting forth a freestanding Eighth Amendment claim. He will also be denied physical access to all counsel and his spiritual advisor if Mr. Smith tests positive for COVID-19 this week.

**B**. **This case is not moot, regardless of the changes made by Defendants**

Defendants first argue that *all* of Mr. Smith's claims are moot because of the alternations to the addendum that they have made over the course of last week. However, without more, those alterations do not render the case moot. Under the doctrine of voluntary cessation,

> [i]t is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice. If it did, the courts would be compelled to leave the defendant free to return to his old ways. In accordance with this principle, the standard we have announced for determining whether a case has been mooted by the defendant's voluntary conduct is *stringent:* A case *might* become moot if subsequent events made it *absolutely clear* that the allegedly wrongful behavior *could not reasonably be expected to recur.*[6]

This case is not moot solely because the Defendants made changes upon this Court's request. If it did, there would be nothing to prevent Defendants from doing the same thing to the next death row inmate it seeks to execute[7] and requiring this Court's time again to resolve the issues in question. This is particularly true in the case of Alabama's execution protocol, because there is no oversight to adoption of any measures in the protocol. *See* Ala. Code § 15-18-82.1(g) ("The policies and procedures of the Department of Corrections for execution of persons sentenced to death shall be exempt from the Alabama Administrative Procedure Act, Chapter 22 of Title 41.").

---

[6] *Sheely v. MRI Radiology Network, P.A.*, 505 F.3d 1173, 1183–84 (11th Cir. 2007) *quoting Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,* 528 U.S. 167, 189 (2000) (internal quotation marks, citations, and alterations omitted; emphases added).

[7] That could even be Mr. Smith, if his execution does not occur this week.

4

The protocol could be changed tomorrow or the morning of the execution, with no notice or oversight. Therefore, the Court could still rule that the changes the Defendants attempted to make in this case violate Mr. Smith's rights and enjoin them from ever putting those changes in place.

### C. Mr. Smith's complaint states claims for which relief can be granted.

The state also claims that none of the counts of Mr. Smith's complaint state a claim for which relief can be granted. Even with the changes made by Defendants to their protocol, each count still states a claim for relief, and the case should move to the discovery stage.

Count 1 of Mr. Smith's original complaint alleged that Defendants plan to have him wear a mask and face shield during the execution and the corrections officer who did the consciousness test also wear a face shield and mask violated the Eighth Amendment because it introduced a significant level of risk of pain. In response, Defendants changed the protocol to delete any requirement that Mr. Smith wear a mask, and to give the officer performing the consciousness assessment the unfettered discretion to remove his mask and / or face shield during part or all of the consciousness assessment. Mr. Smith's complaint still states a claim.

The portion of the claim concerning problems arising out of the officer conducting the consciousness assessment wearing PPE,[8] especially the name response

---

[8] *See, e.g.*, Doc 1 at 24 ("The Smith Addendum's use of masks and face shields has introduced substantial and significant risk that at least one or more steps of the consciousness assessment will

check, remains viable, as the Report leaves it to the discretion of that single correctional officer whether to remove the PPE to perform or judge all or part of the assessment.[9] Specifically, the Report provides, "If the correctional officer . . . believes that his assessment of the inmate or his ability to communicate is being obstructed by his own PPE, then he may remove his shield and/or mask for the time necessary."[10]

At its core, that claim is concerned with any deviations from the long-established protocol governing the consciousness assessment, such that Mr. Smith's constitutional right to equal protection from cruel and unusual punishment will be placed at substantial risk.[11] The Report has now made it official ADOC policy that a single corrections officer has sole and unreviewable discretion to decide whether to deviate from the long-established protocol.[12]

The consciousness assessment is vital to any three-drug protocol using midazolam, because midazolam is not an anesthetic. The whole purpose of a consciousness test is to monitor reactions to stimuli to determine whether the

---

be conducted or will fail to detect whether Mr. Smith is still sensate after administration of midazolam in violation of his right to be free from cruel and unusual punishment.").

[9] Doc. 9 at 1 [2 of 5].

[10] *Id.*

[11] *See, e.g.*, Doc. 1 at 24-25.

[12] Neither the Smith Addendum nor the Report indicate what COVID-19 screening is performed of execution team members. There is not provision for a replacement for the correctional officer trained to administer the consciousness test if he is unable to perform his duties due to having a temperature of 100.4 or testing positive for COVID-19.. This makes the adoption of a policy of unreviewable discretion in conducting the consciousness assessment even more problematic.

prisoner is sensate. It will be impossible for the officer conducting the consciousness test to determine if a lack of response to stimuli is because the prisoner is no longer sensate or because the response has been obstructed by the officer's PPE. Leaving the removal of PPE to an officer's discretion does not negate the possibility that the execution will move forward while Mr. Smith is still sensate because he simply did not hear or understand the officer calling his name. Under such circumstances, Mr. Smith would undoubtedly be subject to cruel and unusual punishment.[13]

The presence of anything that could interfere with the officer's assessment of Mr. Smith's consciousness creates an unacceptable risk of extreme pain from the third drug in the protocol, potassium chloride. This risk violates Mr. Smith's right to equal protection against cruel and unusual punishment. Therefore, Count One states a claim upon which relief could be granted.

Count Two of the complaint involves the Defendants limitation of witnesses to the execution, making Mr. Smith choose between his lawyer, spiritual advisor, or relative to witness his execution. Defendants informed this Court that Mr. Smith may have three witnesses to the execution. However, this is still a violation of Mr. Smith's

---

[13] *See, e.g., Baze v. Rees*, 553 U.S. 35, 53 (2008) (if a prisoner is not rendered insensate by the first drug, "there is a substantial, constitutionally unacceptable risk of suffocation from the administration of pancuronium bromide [the paralytic] and pain from the injection of potassium chloride"); *Glossip v. Gross*, 576 U.S. 863, 949 (2015) (Sotomayor, J., dissenting) (because the second and third drugs "are intended to paralyze the inmate and stop his heart . . . [and] do so in a torturous manner, causing burning, searing pain," it is "critical that the first drug, midazolam, do what it is supposed to do, which is to render and keep the inmate unconscious").

Fourteenth Amendment rights, because he is being treated differently than any other similarly situated death sentenced inmate and any person previously executed. Also, the new statements changing the Smith Addendum do not account for a situation where Mr. Smith's attorney or spiritual advisor are not permitted to enter the prison because of a positive COVID-19 test or having an elevated temperature.

Count Three is also founded on the idea that Mr. Smith's Fourteenth Amendment rights are being violated by Defendants' unequal treatment of him. Defendants' revised plan does not take into account denial of counsel and spiritual advisor during the week even if they just have elevated temperatures, yet do not test positive for COVID-19. Counsel, whether spiritual or legal, are not fungible. In addition, the revised version still does not answer whether they will execute Mr. Smith if he has COVID-19? The only thing that his clear is that all visitors, including his attorneys and spiritual advisor, will be excluded if he tests positive for COVID-19. The Defendants argue that these problems are hypothetical. Yet, even the revisions to their own addendum has hypotheticals.[14] The Defendants also claim that Mr. Smith "wants it both ways" by arguing to reset the execution date because of COVID-19 concerns, but complaining about how the Department is doing it. This is hardly the case. Mr. Smith is being consistent in all regards. The relief he is requesting, in each case is to not have a pandemic affect his constitutional rights leading up to

---

[14] Doc. 9 at 3 ("In the unlikely event…").

8

and during his execution, and only this Court can ensure his constitutional rights are not surrendered in the name of public health.[15]

Mr. Smith is being treated differently in all respects than other persons subject to the lethal injection protocol. He is entitled to receive the same access to counsel, spiritual advisors, and visitors as any other person prior to an execution. Doing otherwise violates his rights under the Eighth and Fourteenth Amendments. This Court should deny the Defendants' motion to dismiss.

## II. Mr. Smith is entitled to a stay of execution.

Mr. Smith has also requested a stay of execution, which the Defendants oppose. Mr. Smith meets all the requirements to stay his execution and enjoin the Defendants from executing him using the Smith Addendum or any of the amendments to that addendum.

Mr. Smith's execution should be stayed to allow him a fair opportunity to challenge the State's adoption of the Smith Addendum, which implicates his constitutional rights. He is entitled to the equitable remedy of a stay if he can show: 1) a substantial likelihood of success on the merits of a claim; 2) the requested action is necessary to prevent irreparable injury; 3) the threatened injury outweighs the harm

---

[15] As Justice Gorsuch recently explained, "Why have some mistaken this Court's modest decision in *Jacobsen* for a towering authority that overshadows the Constitution during a pandemic? In the end, I can only surmise that much of the answer lies in a particular judicial impulse to stay out of the way in times of crisis. But if that impulse may be understandable or even admirable in other circumstances, we may not shelter in place when the Constitution is under attack. Things never go well when we do." *Roman Catholic Diocese of Brooklyn v. Cuomo*, No. 20A-87 (Nov. 25, 2020) (Gorsuch, J., concurring).

9

the stay would inflict upon the non-moving party and 4) the stay would serve the public interest.[16]

The Defendants' sole response to Mr. Smith's motion for stay of execution is to again assert mootness. The Defendants do not address the fact that the only reason Mr. Smith had to request a stay of execution is because they themselves created the crisis by first seeking an execution date during a pandemic, and then making revisions to its protocol less than two weeks before the execution. Mr. Smith's complaint states claims for relief and has a substantial likelihood of success on the merits. The other equities all favor Mr. Smith, because his death at the hands of Defendants under the Smith Addendum and its amendments will cause irreparable harm, he did not unduly delay in the filing of this suit, and the public has an interest in whether an arm of its government is depriving a person of equal treatment under the law in his final days on Earth.

### III. Conclusion

For these reasons and for those in his initial pleadings, Mr. Smith respectfully requests that this Court deny Defendants' Motion to Dismiss and stay his execution.

Respectfully submitted,

**/s/ John A. Palombi**
JOHN ANTHONY PALOMBI
KENTUCKY BAR NO. 86784
**/s/Spencer J. Hahn**
Spencer J. Hahn

---

[16] *Rutherford v. McDonough*, 466 F.3d 970, 979 (11th Cir. 2006); Fed. R. Civ. P. 65.

Oregon Bar No. 043027
ASSISTANT FEDERAL DEFENDERS
FEDERAL DEFENDERS FOR THE
 MIDDLE DISTRICT OF ALABAMA
817 SOUTH COURT STREET
MONTGOMERY, ALABAMA 36104
(334) 834-2099
John_Palombi@fd.org
Spencer_Hahn@fd.org

*Counsel for Mr. Smith*

## CERTIFICATE OF SERVICE

This response was filed, via the CM/ECF system, on February 7, 2021, which will cause all counsel of record to receive an electronic copy.

**/s/ John Palombi**

*Counsel for Mr. Smith*