IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| WILLIE B. SMITH, III, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 2:21-cv-99-RAH |
| | ) (WO) |
| JEFFERSON S. DUNN, *et al.*, | ) |
| | ) |
| Defendants. | ) |

## **MEMORANDUM OPINION AND ORDER**

Plaintiff Willie B. Smith, III ("Smith") is an Alabama death-row inmate in the custody of the Alabama Department of Corrections. On February 2, 2021, Smith filed a complaint pursuant to 42 U.S.C. § 1983 against the Commissioner of the Alabama Department of Corrections and the Warden of Holman Correctional Facility[1] (collectively "the ADOC") in their official capacities.[2] Pending before the Court is Smith's Emergency Motion for Stay of Execution (Doc. 3) filed contemporaneously with Smith's Complaint. In his motion, Smith argues that he is entitled to a stay of his execution, presently scheduled for February 11, 2021,

---

[1] Holman is the primary correctional facility for housing death row inmates in Alabama and is the only facility in the state that carries out executions.

[2] Smith currently has two other § 1983 lawsuits pending: *Smith v. Dunn*, Case No. 21-10348 (11th Cir. 2021), on appeal from the Middle District of Alabama, Case No. 2:20-cv-1026-RAH, and *Smith v. Dunn*, Case No. 2:19-cv-927-ECM (M.D. Ala.).

because the ADOC has implemented a protocol for his execution that will violate his constitutional rights. The ADOC filed an objection to Smith's motion on February 5, 2021. (Doc. 14.)[3] On February 7, 2021, Smith filed his reply (Doc. 15) and the court heard oral argument on the pending motions the next day. Accordingly, this matter is ripe for review. For the reasons that follow, Smith's motion for a stay of his execution is due to be DENIED.

## I.    FACTUAL AND PROCEDURAL HISTORY

On January 27, 2021, Smith filed a motion for a stay of execution in the Alabama Supreme Court.[4] Therein, Smith argued that his execution should be rescheduled to prevent the spread of COVID-19. Smith raised concerns about witnesses and visitors who would be traveling to Alabama from across the country during the week of his execution and noted that the ADOC had no measures in place to test for COVID-19 or otherwise protect visitors and staff. His execution, Smith argued, had all the makings of a "super-spreader event." (Doc. 14-1, p. 1.)[5]

---

[3] Along with its objection, the ADOC also filed a Motion to Dismiss. (Doc. 14.) As of the date of this order, that motion remains pending.

[4] *Ex parte Smith*, No. 1011228 (Ala. Jan. 27, 2021); Doc 14-1.

[5] Citations to page numbers in documents filed in this case will be to the page number generated by the court's CM/ECF system.

The ADOC's response to Smith's motion included a document outlining the measures the ADOC plans to implement to minimize the risks associated with COVID-19, including mandatory COVID-19 testing, rules for social distancing, personal protective equipment ("PPE") requirements, and limitations on the number of witnesses who would be permitted to attend Smith's execution.[6] The Alabama Supreme Court denied Smith's motion on February 1, 2021.[7]

The following day, Smith filed the instant action alleging that the ADOC's changes to its standard protocol will violate Smith's right to equal protection to be free from cruel and unusual punishment, will force Smith to choose between his constitutional rights to counsel, access to the courts, marriage, and free exercise of religion, and will violate Smith's due process rights. (*See* Doc. 1.)

Following a status conference with the court, the ADOC filed a report (Doc. 9) in which it agreed to alter its COVID-19 measures to allow Smith contact visitation during the week preceding his execution and to choose up to three witnesses to attend the execution. This report also addressed several ambiguities within the amended protocol, including a clarification that Smith will not be required to wear a face mask or a face shield during the execution procedure. Smith filed a

---

[6] The ADOC's initial COVID-19 measures permitted Smith to choose only one witness to attend his execution.

[7] *Ex parte Smith,* No. 1011228 (Ala. Feb. 1, 2021).

response (Doc. 11) to the ADOC's report which indicated that several aspects of Smith's claims had been mooted, including the concerns that Smith might be required to wear PPE during his execution procedure and concerns that Smith would have to choose among his attorneys, his pastor, and his family when selecting the single witness permitted to attend his execution. (*See* Doc. 11.)

During oral argument on the emergency motion to stay, counsel for Smith further narrowed the issues still in dispute, conceding that only one colorable claim remains at the present moment.[8] Smith argues that the ADOC's amended COVID-19 measures will subject Smith to cruel and unusual punishment by requiring members of the execution team to wear both a mask and a clear face shield during Smith's execution. Smith says this will prevent the officer conducting the consciousness check[9] from properly assessing whether or not Smith is sedated before proceeding with the execution. (Doc. 11, pp. 1-3.)

---

[8] While Smith places emphasis on the consciousness check, his attorney expressed continuing concern with the ADOC's COVID-19 measures in the event one or more of Smith's witnesses is denied entry into Holman after presenting with a fever at or above 100.4 degrees or testing positive for COVID-19. Recognizing that those concerns are speculative, counsel acknowledged that the prudent action for the court is to withhold ruling on the ADOC's motion to dismiss and instead keep the motion active in case any of these theoretical possibilities become actual issues on the day of Smith's execution.

[9] Smith is scheduled to be executed using Alabama's three-drug lethal injection protocol. This protocol involves administering an initial dose of midazolam, a sedative, followed by a three-step "consciousness check" to ensure an inmate is sedated before the remaining two drugs, a paralytic and a lethal dose of potassium chloride, are administered. (Doc. 1, p. 19.) If the inmate responds to the consciousness check, another dose of midazolam is administered, and the consciousness check is performed a second time.

Because Smith has acknowledged that all other aspects of his claims have been mooted, it is on the basis of this narrowed claim articulated at oral argument that Smith moves to stay his execution.

## II.    JURISDICTION AND VENUE

The Court has original subject matter jurisdiction of this case pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3).  Personal jurisdiction and venue are uncontested, and the Court concludes that venue properly lies in the Middle District of Alabama. *See* 28 U.S.C. § 1391.

## III.    STANDARD OF REVIEW

While a death row inmate may challenge the constitutionality of his execution through a civil action, a stay "is not available as a matter of right," even if execution is imminent. *Hill v. McDonough*, 547 U.S. 573, 584 (2006).  Rather, "a stay of execution is an equitable remedy," and "equity must be sensitive to the State's strong interest in enforcing its criminal judgments without undue interference from the federal courts." *Id.*; *cf. Thompson v. Wainwright*, 714 F.2d 1495, 1506 (11th Cir. 1983) ("Each delay, for its span, is a commutation of a death sentence to one of imprisonment.").  Both the State and the victims of crime "have an important interest in the timely enforcement of a sentence." *Hill*, 547 U.S. at 584.

The standard for granting a stay of execution to a death row inmate is the same as that for granting a temporary restraining order or preliminary injunction. A "death

row inmate is afforded no preferential treatment by his filing of a motion to stay, and all requirements for a stay must be satisfied." *Powell v. Thomas*, 784 F. Supp. 2d 1270, 1273 (M.D. Ala. 2011), aff'd, 641 F.3d 1255 (11th Cir. 2011). A federal court may issue a stay of execution only if the inmate demonstrates each of the following elements: (1) he has a substantial likelihood of success on the merits; (2) he will suffer irreparable injury unless the stay issues; (3) the threatened injury outweighs the harm the stay would cause the other litigant; and (4) if issued, the stay would not be adverse to the public interest. *Chavez v. Florida SP Warden*, 742 F.3d 1267, 1271 (11th Cir. 2014); *see also Powell v. Thomas*, 641 F.3d 1255, 1257 (11th Cir. 2011). The inmate must, "by a clear showing," carry the burden of persuasion on all four requirements. *Hill*, 547 U.S. at 584; *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam).

## IV. DISCUSSION

### A. Substantial Likelihood of Success on the Merits

Smith is only entitled to a stay of his execution if he carries the burden of persuasion on all four requirements, the first of which is a substantial likelihood of success on the merits of his remaining claim. *Chavez*, 742 F.3d at 1271. As counsel for Smith acknowledged during oral argument, Smith's remaining claim involves speculative questions of "what if." The potential constitutional deprivations alleged here depend on an execution team officer failing to properly perform a consciousness

check during Smith's execution in the event, for example, an overhead light creates a glare on the officer's face shield, obscuring his view of Smith. But Smith has not presented the court with facts or evidence to substantiate his concerns.

Smith alleges that his equal protection[10] right to be free from cruel and unusual punishment will be violated if members of the execution team are required to wear PPE, specifically both a face mask and a clear face shield, during his execution because the officer performing the consciousness check may not be able to effectively determine whether Smith remains conscious after the initial dose of midazolam is administered. (Doc. 11, pp. 1-3.)

The ADOC's report clarifying the COVID-19 measures to be implemented during Smith's execution provides that if the correctional officer performing the consciousness check "believes his assessment of the inmate or his ability to communicate is being obstructed by his own PPE, then he may remove his shield and/or mask for the time necessary." (Doc. 9, p. 2.)  Smith urges that leaving the decision of whether to remove PPE to an officer's sole discretion leaves open the *possibility* that Smith's execution may move forward even if Smith is conscious

---

[10] Smith contends he is similarly situated with all other inmates who have been executed or are subject to execution in Alabama. The court does not, at this time, address the question of whether Smith has properly pled an equal protection claim where he has not identified a comparator who has been or is scheduled to be executed in Alabama while COVID-19 measures are in place.  *See Price v. Comm'r, Dep't of Corr.*, 920 F.3d 1317, 1325 (11th Cir. 2019), *cert. denied sub nom. Price v. Dunn*, 139 S. Ct. 1542 (2019) (mem) (holding that an inmate subject to execution under Alabama's lethal injection protocol was not similarly situated to inmates who elected Alabama's alternative nitrogen hypoxia method of execution).

7

because "it will be impossible for the officer . . . to determine if a lack of response to stimuli is because the prisoner is no longer sensate or because the stimuli has been obstructed by the officer's PPE." (Doc. 11, p. 2.)

The ADOC argues that Smith's allegation is unsupported by fact. (Doc. 14, p. 12.) Instead, the ADOC notes, the correctional officer who will conduct the consciousness check is a member of the prison's trained execution team and is educated with regard to what signs to look for in determining whether Smith is conscious. (*Id.*) The ADOC further argues that PPE has been used in "general life" for nearly one year and the correctional officer will not only be aware of any limitations the PPE might impose upon him, but will be in the "best position to determine whether some or part of his PPE needs to be removed for him to perform his duty . . . ." (Doc. 14, p. 11.)

Nothing in the parties' briefs or the evidence before the court appears to indicate that the officer performing Smith's consciousness check will not conduct a constitutionally-sound assessment. The first step of the consciousness check requires the officer to call out Smith's name in a loud voice (Doc. 1, p. 19) while leaning over Smith as he lies strapped to a gurney. Smith worries that a mask and face shield[11] might muffle the sound of the officer's voice, making it unclear if a lack of response

---

[11] The same type of masks and face shields are used every day by medical professionals in their dealings with patients.

on Smith's part is because Smith is adequately sedated or simply because he did not hear the auditory stimulus.

The consciousness check performed under Alabama's execution protocol calls for graded stimuli, beginning with the auditory stimulus, followed by the officer brushing the inmate's eyelashes with his finger and then pinching the skin of the inmate's upper back. (Doc. 14, pp. 9-10.)  Consequently, should there be any issue with the initial auditory stimulus—an issue which, again, is supported only by counsel's argument based on hypothetical scenarios—there remain two additional physical stimuli that will assess Smith's consciousness before the remaining lethal injection drugs are introduced.

Smith also expresses concerns, however, regarding steps two and three of the consciousness check. The wearing of a face shield, Smith argues, *could* create a glare obscuring the officer's vision, which, in turn, *may* prevent the officer from seeing small movements that might indicate Smith is still sensate. The ADOC's amended COVID-19 measures address Smith's concerns by permitting the officer performing the consciousness check to remove his PPE in the event his mask or face shield prevents him from sufficiently performing his duties. The court has no reason to disagree that as a member of the trained execution team, this officer is knowledgeable with regard to the signs of consciousness and will know whether his ability to observe those signs is impeded by his PPE. Any concern that this officer

will not perform a constitutionally-adequate consciousness check is purely speculative at this time.

Moreover, Smith's claim does not rise to the level necessary to satisfy the United States Supreme Court's high standard to constitute cruel and unusual punishment. The Court has stated, "simply because an execution method may result in pain, either by accident or as an inescapable consequence of death, does not establish the sort of 'objectively intolerable risk of harm' that qualifies as cruel and unusual." *Baze v. Rees*, 553 U.S. 24, 50 (2008) (plurality op.). Instead, Smith must show the "sufficiently imminent danger" that he is "sure or very likely" to endure "needless suffering." *Glossip v. Gross*, 576 U.S. 863, 877 (2015) (citations omitted).

Smith argues that "significant deviations from a protocol that protects inmates from cruel and unusual punishment can violate the Eighth Amendment." *Arthur v. Thomas*, 674 F.3d 1257, 1263 (11th Cir. 2012). The case on which Smith relies arose after the ADOC's execution team failed to perform the final step of a consciousness check during a prior execution. *Id.* Arthur, a death-row inmate, argued that the ADOC may likewise fail to fully perform the required consciousness check during his upcoming execution, which might subject him to a cruel and unusual death. *See id.* Because the ADOC had failed to perform the final step of a consciousness check during its most recent execution, the Eleventh Circuit held that Arthur had sufficiently pled a plausible, non-speculative claim for relief. *Id.*

Unlike the plaintiff in *Arthur*, Smith has not provided evidence that the ADOC will not perform or has not recently performed a satisfactory consciousness check.[12] As Smith noted in his complaint, the ADOC has employed its three-step consciousness check during every execution since 2011. (Doc. 1, p. 19.) Smith characterizes the PPE requirements as a significant deviation from the ADOC's protocol and speculates that the PPE *might* interfere with the adequacy of the assessment. But the ADOC has represented—and the revised protocol confirms—that it still intends to perform all three steps of the consciousness check and will allow its officer to remove any PPE barriers to ensure the assessment is adequately performed. (*See* Docs. 9, 14.) Smith has not identified sufficiently imminent danger that he is sure or very likely to suffer needlessly. *See Glossip,* 576 U.S. at 877. Accordingly, the court finds that Smith is not substantially likely to succeed on the merits of any remaining claim.

### B. Remaining Stay Requirements

In addition to evaluating Smith's substantial likelihood of success on the merits of his claim, the court must also evaluate the remaining stay requirements: whether irreparable injury will be suffered unless a stay issues, whether the threatened injury to Smith outweighs whatever damage a stay may cause the ADOC,

---

[12] Further, the *Arthur* case was on appeal from a Rule 12(b)(6) dismissal. On a motion to stay, the court determines a substantial likelihood of success on the merits of a claim, not simply whether a claim has been sufficiently pled.

11

and if issued, whether a stay would not be adverse to the public interest. *See Chavez,* 742 F.3d at 1271.

Smith argues that if this court does not issue a stay, he will suffer irreparable injury—namely an unconstitutionally painful death—and will be left with no opportunity for redress of his constitutional claims. (Doc. 3.) He further attests there would be no injury to the ADOC because the state of Alabama chose to move for Smith's execution during a global pandemic and that the public has no interest in carrying out unconstitutional executions. (*Id.*) Smith also notes that there was no undue delay in the timing of his motion as he brought this suit within days of learning of the ADOC's COVID-19 measures. (*Id.*)

The court acknowledges that Smith did not engage in undue delay in filing the instant motion, but nonetheless finds that the remaining stay considerations weigh in favor of the ADOC. Any argument that Smith will suffer irreparable injury is, again, speculative at this time. Smith will only suffer an unconstitutional execution if the execution team fails to perform its obligations with regard to the consciousness check. As articulated above, though, there is no evidence that the ADOC does not intend to conduct a constitutionally-sound consciousness check. Instead, the ADOC has implemented measures to ensure that its officers can perform the assessment without impediment.

The court also recognizes that "[b]oth the State and the victims of crime have an important interest in the timely enforcement of a sentence." *Hill*, 547 U.S. at 584. Therefore, "equity must be sensitive to the State's strong interest in enforcing its criminal judgments without undue interference from the federal courts." *Id.*

## V.   CONCLUSION

Based on the foregoing reasons, Smith has failed to carry the burden of persuasion on the requirements for a stay of his execution. Accordingly, it is

ORDERED that Smith's Emergency Motion for Stay of Execution (Doc. 3) is hereby DENIED.

DONE and ORDERED this 9th day of February 2021.

        /s/ R. Austin Huffaker, Jr.
R. AUSTIN HUFFAKER, JR.
UNITED STATES DISTRICT JUDGE