IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| WILLIE B. SMITH, III, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 2:21-cv-99-RAH |
| | )         (WO) |
| JEFFERSON S. DUNN, *et al.*, | ) |
| | ) |
| Defendants. | ) |

**<u>MEMORANDUM OPINION AND ORDER</u>**

Plaintiff Willie B. Smith, III is an Alabama death-row inmate in the custody of the Alabama Department of Corrections. On February 2, 2021, Smith filed a complaint pursuant to 42 U.S.C. § 1983 against the Commissioner of the Alabama Department of Corrections and the Warden of Holman Correctional Facility[1] (collectively "the ADOC") in their official capacities alleging that the ADOC had devised a COVID Protocol for Smith's execution that will violate his federal constitutional rights. Smith amended his complaint (Doc. 19) on February 9, 2021, to add claims that the ADOC's COVID Protocol also violates Alabama state law and Smith's rights under the Alabama Constitution. Smith is scheduled to be executed on October 21, 2021, his second execution date.[2]

---

[1] Holman is the primary correctional facility for housing death row inmates in Alabama and is the only facility in the state that carries out executions.

[2] Smith's initial execution date was February 11, 2021. Due to late developments in a separate case regarding the presence of a spiritual advisor in the execution chamber at the time of Smith's execution, the initial death warrant expired. Following settlement of that case, the Alabama Supreme Court set a new date for Smith's execution.

On October 12, 2021, following resolution of a dispute over the number of witnesses allowed to be present during Smith's execution,[3] this court ordered the parties to file a joint status report indicating which claims in the Amended Complaint remained in dispute. (Doc. 52.) The parties filed their report on October 14, 2021 (Doc. 55), wherein they identify as still in dispute Smith's claims that the ADOC's COVID Protocol: (1) violates his right to be free from cruel and unusual punishment as guaranteed by the Fourteenth Amendment's Equal Protection Clause (Claim One); (2) violates his right under Alabama Code § 15-18-81 to access his attorney, relatives, and spiritual advisor the week of his execution (Claim Five); (3) violates his right to free exercise of his religion under the Alabama Religious Freedom Amendment ("ARFA") to the Alabama Constitution (Claim Six); and (4) violates his right to be free from cruel and unusual punishment under the Eighth Amendment (Claim Seven).

The ADOC moved to dismiss Smith's federal claims pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) and asks the court to decline to exercise supplemental jurisdiction over Smith's state law claims. (Doc. 23.) Smith responded to the ADOC's motion. (Doc. 25.) This matter is ripe for review.

---

[3] On October 8, 2021, Smith filed a Motion for Preliminary Injunction (Doc. 46) asking this court to enjoin the ADOC from executing Smith unless all five of his requested witnesses are permitted to be present during his execution. Following a teleconference with the court, the parties agreed that all five witnesses would be permitted to attend provided they signed waivers provided by the ADOC. Smith filed a notice on October 12, 2021 (Doc. 51), indicating that his witnesses had signed the waivers and he later withdrew his Motion for Preliminary Injunction (Doc. 53).

At this time, the court addresses only Smith's state law claims. The court reserves ruling on the ADOC's motion to dismiss Smith's remaining federal claims. For the following reasons, the court declines to exercise supplemental jurisdiction over Smith's state law claims. Accordingly, the ADOC's motion to dismiss is due to be GRANTED IN PART, to the extent that Smith's state law claims will be dismissed without prejudice so that he may further pursue these claims in state court.

## II.  BACKGROUND

To begin, the court takes judicial notice of the fact that in March of 2020, the Centers for Disease Control and Prevention, the national health protection agency, and the National Institutes of Health reported accounts of a deadly respiratory virus commonly known as COVID-19 that was spreading throughout the world. This lawsuit stems from changes the ADOC made to its standard lethal injection execution protocol in response to the COVID-19 global pandemic so that the ADOC could continue to perform executions. Smith is the first person scheduled for execution in Alabama during this ongoing pandemic. (Doc. 23 at 3.)[4]

On January 27, 2021, Smith filed a motion to reset his execution in the Alabama Supreme Court.[5] Therein, Smith argued that his execution should be rescheduled to prevent the spread of COVID-19. Smith raised concerns about

---

[4] Citations to page numbers in documents filed in this case will be to the page number generated by the court's CM/ECF system.

[5] *Ex parte Smith,* No. 1011228 (Ala. Jan. 27, 2021); Doc 14-1.

3

witnesses and visitors who would be traveling to Alabama from across the country during the week of his execution and noted that the ADOC had no measures in place to test for COVID-19 or otherwise protect visitors and staff. His execution, Smith argued, had all the makings of a "super-spreader event." (Doc. 14-1 at 1.)

The ADOC's response to Smith's state court motion included a document outlining the measures the ADOC plans to implement to minimize the risks associated with COVID-19, including temperature checks, COVID-19 testing, rules for social distancing, personal protective equipment requirements, and limitations on the number of witnesses who would be permitted to attend Smith's execution.[6] The Alabama Supreme Court denied Smith's motion on February 1, 2021.[7]

The following day, Smith filed his initial complaint in the instant action, alleging that the ADOC's changes to its standard protocol violated Smith's right to equal protection to be free from cruel and unusual punishment; forced Smith to choose between his constitutional right to counsel, access to the courts, marriage, and free exercise of religion; and violated Smith's due process rights. (*See* Doc. 1.) Within his filings in this action, Smith noted his concerns that the ADOC's COVID Protocol would also violate his rights under state law, but acknowledged that he

---

[6] The ADOC's initial COVID-19 measures permitted Smith to choose only one witness to attend his execution.

[7] *Ex parte Smith,* No. 1011228 (Ala. Feb. 1, 2021).

would pursue those claims in state court because it was the more appropriate forum. (Doc. 11 at 3-4, n. 6.)

Indeed, two days later, on February 4, 2021, Smith filed a lawsuit in state court alleging that the ADOC's Covid Protocol violated his state statutory and state constitutional rights.[8] On February 8, 2021, the ADOC moved to dismiss the complaint, asserting five grounds for dismissal, both substantive and procedural. Following oral argument on the ADOC's motion, the state circuit court granted the motion to dismiss.

The next day, Smith amended his complaint in this court, adding to this action the exact claims that were dismissed by the Montgomery County Circuit Court. (*See* Doc. 19.)

Smith's initial death warrant expired on February 12, 2021, following the United State Supreme Court's decision to decline to lift a preliminary injunction requiring the ADOC to allow Smith to choose a religious advisor who may be present inside the chamber during his execution. Once Smith's new execution date was set, the parties renewed their discussions of the claims at issue in this action. The ADOC has filed its updated COVID Protocol (Doc. 42) and has further agreed to allow Smith to have five witnesses present during his execution (Doc. 51). Following Smith's withdrawal of his Motion for Preliminary Injunction (Doc. 53),

---

[8] *See Smith v. Dunn*, 03-cv-2021-900139.00 (Montgomery County Cir. Ct. Feb. 4, 2021).

the parties submitted ta status report clarifying the claims which remain in dispute, two of which, Claims Five and Six, are state law claims.[9] The court now addresses those claims.

### III.  JURISDICTION AND VENUE

The court has original subject matter jurisdiction of this case pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3).  Personal jurisdiction and venue are uncontested, and the court concludes that venue properly lies in the Middle District of Alabama. *See* 28 U.S.C. § 1391.

### IV.  DISCUSSION

Still in dispute are two of Smith's state law claims: an alleged violation of his rights under Alabama Code § 15-18-81 (Claim Five) and an alleged violation of ARFA (Claim Six).

Because Smith filed this action pursuant to 42 U.S.C. § 1983, the court has original jurisdiction over Smith's federal claims.  In the context of actions filed under this statute, "liability is appropriate solely for violations of federally protected rights." *Almand v. DeKalb County*, 103 F.3d 1510, 1513 (11th Cir. 1997) (citing *Baker v. McCollan*, 443 U.S. 137, 145-46 (1979)).  Section 1983 does not create any substantive rights; rather, "it merely provides a remedy for deprivations of federal

---

[9] Claim Four of the Amended Complaint likewise raises a question of state statutory law. In their status report, the parties agree that this claim has been resolved. (Doc. 55 at 2.)  As a result, this court does not address Claim Four in its order.

statutory and constitutional rights." *Almand*, 103 F.3d at 1512; *accord Doe v. Sch. Bd. of Broward Cty.*, 604 F.3d 1248, 1265 (11th Cir. 2010).

Given the court's original jurisdiction over Smith's claims arising under § 1983, it has the authority to exercise supplemental jurisdiction over Smith's state law claims. *See* 28 U.S.C. § 1367(a). The ADOC acknowledges this authority, but submits that this court should decline to exercise supplemental jurisdiction in this case, noting that Smith's state statutory challenges and ARFA claim are questions of state law and that comity principles apply. (Doc. 23 at 22-34.)

The doctrine of supplemental jurisdiction permits "federal courts to decide certain state-law claims involved in cases raising federal questions" when doing so would promote judicial economy and procedural convenience. *Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 348-49 (1988). Now codified at 28 U.S.C. § 1367, the modern doctrine of supplemental jurisdiction stems from *United Mine Workers of America v. Gibbs,* 383 U.S. 715 (1966), and *Cohill. See City of Chicago v. Int'l Coll. of Surgeons,* 522 U.S. 156, 173 (1997) (explaining that "[t]he supplemental jurisdiction statute codifies [the] principles" outlined in *Gibbs* and *Cohill*). "As articulated by *Gibbs,* the doctrine of pendent jurisdiction . . . is a doctrine of flexibility, designed to allow courts to deal with cases involving pendent claims in the manner that most sensibly accommodates a range of concerns and values." *Cohill,* 484 U.S. at 350.

"Whenever a federal court has supplemental jurisdiction under section 1367(a), that jurisdiction should be exercised unless section 1367(b) or (c) applies." *Parker v. Scrap Metal Processors, Inc.,* 468 F.3d 733, 743 (11th Cir. 2006). District courts only possess the authority to dismiss claims brought under § 1367(a) if:

(1) the claim raises a novel or complex issue of State law,

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3) the district court has dismissed all claims over which it has original jurisdiction, or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c); *Parker,* 468 F.3d at 743 ("Any one of the section 1367(c) factors is sufficient to give the district court discretion to dismiss a case's supplemental state law claims."). Once any of these factors is satisfied, a district court has discretion to dismiss supplemental claims and must "weigh . . . at every stage of the litigation" whether dismissal is appropriate. *See City of Chicago,* 522 U.S. at 173 (quotation marks omitted).

In this action, Smith raises claims involving "novel and complex issues of state law," specifically, the interpretation of state statutes and the application of a state constitutional amendment. (*See* Docs. 19, 20.) In deciding whether to exercise jurisdiction over state law claims, this court must consider the factors of judicial economy, convenience, fairness, and comity. *See Ameritox, Ltd. v. Millennium*

8

*Labs., Inc.*, 803 F.3d 518, 537 (11th Cir. 2015). Upon consideration of these factors, the court concludes that it should decline to exercise jurisdiction in this instance.

While the factor of convenience tips in favor of exercising jurisdiction, considerations of fairness, judicial economy, and—perhaps most importantly—comity weigh heavily in favor of dismissal.

Here, considerations of fairness do not support an exercise of jurisdiction. First and foremost, Smith initially brought his state law claims in state court. In fact, in his briefing to this court on his first motion to stay his initial execution, Smith referenced his strategy and plan to file a separate state court lawsuit, acknowledging that what rights the state statutes at issue do or do not provide "is a separate question *more appropriately decided by a state court*." (Doc. 11 at 4-5, n. 6) (emphasis added.). After briefing and oral argument on the ADOC's motion to dismiss Smith's state court complaint, the state court granted the ADOC's motion, which sought dismissal for various reasons—among them, the failure to state a claim as to the statutory and ARFA challenges. Rather than appeal the state court's decision, Smith amended his federal complaint, assuming the state court's dismissal was not merits-based. The state court's order, though, does not specify its basis for dismissal. (Doc. 23-1.) This court's dismissal of Smith's state law claims is warranted to permit Smith to continue his pursuit in state court, where these claims were initially filed and the forum in which Smith agreed the claims should be resolved.

As the Eleventh Circuit noted in *Ameritox*, "every litigant who brings supplemental claims in court knowingly risks the dismissal of those claims." *Ameritox*, 803 F.3d at 539; *see, e.g., Annulli v. Panikkar,* 200 F.3d 189, 203 (3d Cir. 1999) (noting that it was not unfair to dismiss supplemental claims because "Annulli and his lawyers knowingly risked dismissal of [Annulli's] pendent claims when they filed suit in federal district court and invoked the Court's discretionary supplemental jurisdiction power"); *Pitchell v. Callan,* 13 F.3d 545, 549 (2d Cir. 1994) (noting that declining to exercise jurisdiction was not an abuse in part because "[w]hen [the plaintiff] brought his state-law claims in federal court, he must have realized that the jurisdiction he invoked was pendent and possibly tentative").

Principles of comity and economy also heavily dictate that Alabama state courts are better suited to resolve these important questions of state law. "Both comity and economy are served when issues of state law are resolved by state courts." *Rowe v. City of Fort Lauderdale*, 279 F.3d 1271, 1288 (11th Cir. 2002). "Federal courts are (and should be) loath to wade into uncharted waters of state law, and should only do so when absolutely necessary to the disposition of a case." *Ameritox*, 803 F.3d at 540.

Indeed, the U. S. Supreme Court has declared that "[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law."

*United Mine Workers v. Gibbs*, 383 U.S. at 726. In our federalist system, "[s]tate courts, not federal courts, should be the final arbiters of state law. *Baggett v. First Nat'l Bank of Gainesville,* 117 F.3d 1342, 1353 (11th Cir. 1997); *see also Hardy v. Birmingham Bd. of Educ.*, 954 F.2d 1546, 1553 (11th Cir. 1992) (noting that "[s]tate courts, not federal courts, are the final expositors of state law" in its decision not to exercise pendent jurisdiction).

As even Smith initially acknowledged, an Alabama court should interpret what the state's constitution and its statutes do and do not say. Smith should continue to litigate these state claims in that more appropriate forum. Accordingly, this court declines to exercise supplemental jurisdiction over Smith's state law claims, Claims Five and Six. These claims will be dismissed without prejudice to Smith's right to further pursue them in state court.

## V. CONCLUSION

Accordingly, it is hereby ORDERED that Defendants' Motion to Dismiss (Doc. 23) the Amended Complaint is GRANTED IN PART, as follows:

1. The court declines to exercise supplemental jurisdiction as to Claims Five and Six. These claims are DISMISSED without prejudice.

2. Claim Four is DISMISSED without prejudice by agreement of the parties.

3. The court reserves ruling on the ADOC's Motion to Dismiss (Doc. 23) as to the remaining claims, Claims One and Seven. This case is not closed.

A separate final judgment as to Claims Five and Six will be entered.

Done this the 15th day of October, 2021.

                                      /s/ R. Austin Huffaker, Jr.
                                      R. AUSTIN HUFFAKER, JR.
                                      UNITED STATES DISTRICT COURT